UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                  :

UNITED STATES OF AMERICA,              :        19-CV-5863 (ARR) (SJB)

       -against-                                   :       <u>NOT FOR ELECTRONIC</u>
                                                       :       <u>OR PRINT PUBLICATION</u>
$400,108.00,

                 *Defendant*.           :       **OPINION & ORDER**

-------------------------------------------------------------------- X

ROSS, United States District Judge:

On May 13, 2017, the government seized $400,108 from claimant, Sevil N. Shakhmanov, when he failed to report the cash before attempting to board a flight to Istanbul, Turkey, from John F. Kennedy International Airport ("JFK"). Claimant's Response Rule 56.1 Statement ¶¶ 1, 17 ("Claimant's Statement"), ECF No. 16. The government now moves for summary judgment, claiming it is entitled to civil forfeiture of the funds under 31 U.S.C. § 5317(c)(2)(A) and 31 U.S.C. § 5332(c)(1). Gov't's Mot. Summ. J. 8–21 ("Gov't's Mot."), ECF No. 15-9. Claimant opposes, arguing that the government has failed to prove no genuine issues of material fact remain as to forfeitability and, in any event, seizing the entire $400,108 would be grossly disproportionate under the Eighth Amendment to the U.S. Constitution. Claimant's Opp'n 3–14, ECF No. 16-4. For the following reasons, I deny the government's motion.

## BACKGROUND

On May 13, 2017, claimant, Sevil N. Shakhmanov, attempted to board a flight to Istanbul, Turkey, from JFK. Claimant's Statement ¶ 1.[1] He was traveling with two carry-on bags that he

---

[1] All undisputed facts are taken from claimant's response to the government's Rule 56.1 statement.

1

packed himself with clothes, shoes, and $400,108 in cash. *Id.* ¶¶ 8–9.

Four Customs and Border Protection ("CBP") officers attest that before boarding his flight, claimant was advised of the requirement to report any currency he was seeking to transport that exceeded $10,000. Raio Decl. ¶ 9, ECF No. 15-3; Cruickshank Decl. ¶ 9, ECF No. 15-4; Vazquez Decl. ¶ 11, ECF No. 15-5; Silvestri Decl. ¶ 9, ECF No. 15-7. They state that claimant was then presented with a Currency and Other Monetary Instruments Report ("CMIR") Form, which he read, completed, and signed, declaring that he was transporting only $210 in U.S. currency. Raio Decl. ¶ 10; Cruickshank Decl. ¶ 9; Vazquez Decl. ¶ 11; Silvestri Decl. ¶ 10. The government has submitted claimant's signed CMIR Form, on which "$210" is handwritten. Gov't's Mot., Ex. C, ECF No. 15-6. The CMIR Form also reads, "if you transport, attempt to transport, or cause to be transported . . . currency or other monetary instruments in an aggregate amount exceeding $10,000 . . . at one time from the United States to any foreign place . . . you must file a report with U.S. Customs and Border Protection." *Id.*

Claimant asserts that the agents did not verbally advise him of the currency reporting requirement on the jet bridge and that he otherwise was unaware of it. Shakhmanov Decl. ¶¶ 7–9, ECF No. 16-3. Rather, claimant submits that the agents asked him "if [he] was carrying any cash and [he] answered, 'yes.'" *Id.* ¶ 7. An officer pointed to one of the two carry-on bags and asked how much money he had in there. *Id.* Claimant responded that he had "two hundred ten thousand" in the bag. *Id.* Then the officer "pushed a printed paper at [him] and told [him] to write 'two ten' . . . and sign [his] name." *Id.* Claimant disputes that he read and understood the CMIR Form before he signed it. *Id.* ¶ 11. Claimant submits that "[w]hile this was going on [he] told the agent, more than once, that [he] had another 'one hundred ninety thousand' dollars in the other bag." *Id.* ¶ 7.

A subsequent examination of claimant's carry-on bags revealed "a total of $400,108 in

2

U.S. currency."[2] Claimant's Statement ¶ 14. CBP then seized and processed the cash. *Id.* ¶ 17.

On or about May 17, 2017, a criminal complaint was filed in the U.S. District Court for the Eastern District of New York charging claimant with violations of 31 U.S.C. §§ 5316(a)(1)(A), 5316(b), and 5332. *Id.* ¶ 22. On or about June 9, 2017, however, the criminal complaint was voluntarily dismissed without prejudice. *Id.* ¶ 23. The government then filed the instant action for civil forfeiture on October 17, 2019. Compl., ECF No. 1. The government served its motion for summary judgment on May 20, 2021. Gov't's Mot. Claimant served his opposition on June 19, 2021, Claimant's Opp'n, and the government served its reply on July 12, 2021, Gov't's Reply, ECF No. 17. On July 20, 2021, claimant moved for leave to file a sur-reply. Mot. Leave File, ECF No. 18.

## LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). Rather, it "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

In evaluating both parties' submissions, I must "construe the facts in the light most

---

[2] Claimant appears to dispute the distribution of the cash between the bags, Claimant's Statement ¶ 15, but this fact is immaterial.

favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant," *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted), but "only if there is a 'genuine' dispute as to those facts," *Scott*, 550 U.S. at 380 (quoting Fed. R. Civ. P. 56(c)).

## DISCUSSION

### I. The Government Has Proven Forfeitability Under 31 U.S.C. § 5317(c)(2)(A) But Not Under 31 U.S.C. § 5332(c)(1).

#### A. 31 U.S.C. § 5317(c)(2)(A)

The civil forfeiture provision in 31 U.S.C. § 5317(c)(2)(A) states: "Any property involved in a violation of section . . . 5316 . . . of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code." To prevail on a civil forfeiture claim under this provision, the government must prove forfeitability by a preponderance of the evidence. 18 U.S.C. § 983(c)(1).

"A violation of 31 U.S.C. § 5316 automatically triggers forfeiture under 31 U.S.C. § 5317." *United States v. $248,430*, No. 01-CV-5036 (SJF), 2004 WL 958010, at *3 (E.D.N.Y. Apr. 14, 2004) (citation omitted). Section 5316 provides that "a person or an agent or bailee of the person shall file a report . . . when the person, agent, or bailee knowingly. . . transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time . . . from a place in the United States to or through a place outside the United States." 31 U.S.C. § 5316(a)(1)(A).

"The Second Circuit has explicitly held that 'as a matter of statutory construction the government need not prove in a civil forfeiture action under 31 U.S.C. § 5317(c) that the person

4

who allegedly failed to comply with the reporting requirement of § 5316(a) either had actual knowledge of, or intended "willfully" to violate, that requirement.'" *United States v. $13,223.00*, No. 12-CV-898 (ARR) (SMG), 2012 WL 1232102, at *2 (E.D.N.Y. Apr. 12, 2012) (quoting *United States v. $395,500*, 828 F.2d 930, 934 (2d Cir. 1987)); *see also United States v. $145,139.00*, 18 F.3d 73, 75 (2d Cir. 1994); *United States v. $170.000*, 903 F. Supp. 373, 376 (E.D.N.Y. 1995). Rather, "[t]he only knowledge requirement is that the person know that he or she is transporting more than $[10],000 out of the country." *$13,223.00*, 2012 WL 1232102, at *2 (quoting *United States v. $122,043*, 792 F.2d 1470, 1474 (9th Cir. 1986)).

Here, claimant "do[es] not dispute, for purposes of this summary judgment motion only, that there is no issue of material fact that when [he] attempted to board an international flight, without having declared the $400,000 he was carrying, he, at that time, had violated the currency reporting requirements of § 5316." Claimant's Opp'n 3–4. Given that "[a] violation of 31 U.S.C. § 5316 automatically triggers forfeiture under 31 U.S.C. § 5317," *$248,430*, 2004 WL 958010, at *3 (citation omitted), by conceding such a violation, claimant "has relieved the government" of its burden to prove forfeitability under § 5317, *United States v. $132,245.00*, 764 F.3d 1055, 1057 (9th Cir. 2014).

Nevertheless, claimant argues that the government has failed to show forfeitability by a preponderance of the evidence because it has not established that he had "knowledge, either actual or constructive," of § 5316's reporting requirements. Claimant's Opp'n 4. In doing so, claimant relies on the Second Circuit's due process analysis in *United States v. $395,500*, 828 F.2d 930. There, the government sought civil forfeiture under § 5317 of unreported funds seized from a motorist at the U.S.-Canada border who claimed no knowledge of § 5316's currency reporting requirement. *Id.* at 931. The court rejected the argument that the government must prove actual

5

knowledge of § 5316's reporting requirement to establish forfeitability under § 5317(c) "as a matter of statutory construction." *Id.* at 934. However, it suggested that imposing civil forfeiture for inadvertent violations § 5316's reporting requirement could raise serious constitutional questions "when the government has taken no steps whatsoever to provide reasonable notice of the requirement." *Id.* at 935. "[U]nder the facts and circumstances of [that] particular case," though, it concluded that "the due process requirement could be satisfied . . . by a showing that [the claimant] could be charged with constructive knowledge of the currency reporting requirement." *Id.*; *see also id.* at 932 ("[D]ue process requirements could be satisfied if the government can show that, under the circumstances, [the claimant] should reasonably have been aware of the likelihood of having to report the currency he endeavored to transport out of the country."). Though the Second Circuit remanded for the district court to examine the facts in light of its opinion, it remarked that the case before it was "exceptional" in that "[t]he parties stipulated below that there were no signs or notices posted on or near the bridge informing motorists of the currency reporting requirement." *Id.* at 931, 936. Indeed, on remand, the district court distinguished the case from those involving air travelers "who were asked before leaving the United States about whether or not they have more than $10,000 (formerly $5,000) in currency." *United States v. $359,500*, 25 F. Supp. 2d 140, 145 (W.D.N.Y. 1998) (citing cases).

Given the limitations of the Second Circuit's due process analysis in *$359,500*, claimant cannot undermine the government's showing of forfeitability under § 5317(c) because the government has sufficiently proved constructive knowledge. Claimant disputes that CBP officers advised him of the reporting requirements on the jet bridge, claiming that they merely asked if he was carrying any cash. Shakhmanov Decl. ¶¶ 7, 9. Claimant asserts that he informed the officers that he was carrying $210,000 in one duffel bag and $190,000 in another and that they curtly told

6

him to write "$210" on the CMIR Form and sign it. *Id.* ¶ 7. The government submits that claimant "read the CMIR Form, acknowledged he understood it, and completed and signed the CMIR Form, declaring he had in his possession and was transporting only $210 in U.S. currency." Gov't's Rule 56.1 Statement ¶ 12, ECF No. 15-2. But claimant denies that assertion, pointing to his narrative of events. Shakhmanov Decl. ¶¶ 7, 12.

These disputed facts, however, are immaterial. The government submitted claimant's CMIR Form, which advised him: "if you transport, attempt to transport, or cause to be transported (including by mail or other means) currency or other monetary instruments in an aggregate amount exceeding $10,000 . . . at one time from the United States to any foreign place . . . you must file a report with U.S. Customs and Border Protection." Gov't's Mot., Ex. C. Even if claimant did not read and understand the CMIR Form,[3] Shakhmanov Decl. ¶ 12, he cannot deny that he was given the form (which he signed) or that the form clearly advised him of the currency reporting requirement, Gov't's Mot., Ex. C. Having received the CMIR Form, claimant "should reasonably have been aware of the likelihood of having to report the currency he endeavored to transport out of the country," *$359,500*, 828 F.2d at 932, thus establishing constructive knowledge. *Cf. United States v. $36,113.00*, No. 89-CV-2761 (RR), 1990 WL 203114, at *2 (E.D.N.Y. Dec. 3, 1990) (finding on summary judgment that the government's submission of "a copy of Customs Form 503, signed by [the claimant], which specifically advises of the reporting requirements for currency over $10,000 and the consequences of failing to file . . . belie[d] her claim that she lacked notice and actual knowledge of the reporting requirement"); *Toure v. United States*, 24 F.3d 444, 446 (2d Cir. 1994) (holding that an English-language notice of administrative forfeiture satisfied due

---

[3] Claimant disputes that the CBP officers "were able to communicate with [him] in English," Claimant's Statement ¶ 18, but does not dispute that he was able to read a form advising him of his *Miranda* rights in English, *id.* ¶ 21.

7

process for a native French speaker). Therefore, the government has met its burden to show forfeitability under § 5317(c), and claimant has failed to rebut that showing.[4]

### B. 31 U.S.C. § 5332(c)(1)

The bulk cash smuggling statute, 31 U.S.C. § 5332(a)(1), provides that "[w]hoever, with the intent to evade a currency reporting requirement under section 5316, knowingly conceals more than $10,000 in currency or other monetary instruments on the person of such individual or in any conveyance, article of luggage, merchandise, or other container, and transports or transfers or attempts to transport or transfer such currency or monetary instruments from a place within the United States to a place outside of the United States . . . shall be guilty of a currency smuggling offense." "Any property involved in a violation of subsection (a), or a conspiracy to commit such violation, and any property traceable to such violation or conspiracy, may be seized and forfeited to the United States." 31 U.S.C. § 5332(c)(1).

Unlike § 5317(c), § 5332(c) requires that the government prove by a preponderance of the evidence both "intent to evade a currency reporting laws" and "knowing[] conceal[ment]" of the currency sought to justify civil forfeiture. *United States v. $225,850.00*, No. 03-CV-6582 (GPS), 2007 WL 9718551, at *5 (C.D. Cal. Feb. 15, 2007); *see also United States v. $120,856*, 394 F. Supp. 2d 687, 691 (D.V.I. 2005).

The government has failed to prove there are no genuine disputes of material fact as to claimant's intent to evade the currency reporting requirement. While I have found that claimant had constructive knowledge of § 5316's currency reporting requirement, claimant disputes that he had actual knowledge of that requirement, let alone the intent to evade it. Specifically, he denies

---

[4] For the same reasons, I deny claimant's request for summary judgment in his favor on the § 5317(c) claim. *See* Claimant's Opp'n 9–10.

that he was aware of the reporting requirement beforehand, he denies that CBP officers informed him of the reporting requirement on the jet bridge, he denies reading and understanding the CMIR Form before signing it, and he claims he orally informed the CBP officers that he had $210,000 in one duffel bag and $190,000 in the other. Shakhmanov Decl. ¶¶ 7–12. Further, he asserts that he wrote "$210" on the CMIR Form because he misunderstood what the CBP officers had told him. *Id.* ¶ 7. If claimant's assertions prove true at trial, a reasonable trier of fact could conclude that claimant did not have the specific intent to evade the reporting requirement. Thus, construing the disputed facts in the light most favorable to claimant, the government has not met its burden of proving forfeitability under § 5332(c)(1).[5]

## II. Genuine Disputes of Material Fact Remain as to Claimant's Eighth Amendment Challenge to Full Forfeiture.

The government moves for forfeiture of the entire $400,108 seized from claimant under both § 5317(c) and § 5332(c)(1). Gov't's Mot. 21. Claimant argues that even if the government has proved forfeitability, seizing all $400,108 would be grossly disproportionate to the violations at issue, running afoul of the Eighth Amendment to the U.S. Constitution. Claimant's Opp'n 10–13. Because I have found that the government has established forfeitability only as to § 5317(c), I can address only claimant's Eighth Amendment argument challenging full forfeiture under that statute.

As an initial matter, the parties dispute who bears the burden of proof on this issue for purposes of the instant motion. Both parties agree that at trial, "[t]he burden rests on the defendant to show the unconstitutionality of the forfeiture." *United States v. Castello*, 611 F.3d 116, 120 (2d

---

[5] Claimant appears to cross-move for summary judgment on the § 5332(c)(1) claim. Claimant's Opp'n 10. However, I deny this request because claimant has not established that no reasonable trier of fact could find that he had intent to evade the reporting requirement.

Cir. 2010). But claimant raises his Eighth Amendment challenge to undermine the government's motion for summary judgment, in which the government otherwise bears the burden of showing "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the ultimate burden of proof is on the nonmoving party, the moving party meets his initial burden for summary judgment by '"showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *United States v. $119,984*, 129 F. Supp. 2d 471, 476 (E.D.N.Y. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)), *vacated on other grounds* 304 F.3d 165 (2d Cir. 2002). In other words, the government must show that claimant "cannot meet his burden of establishing that forfeiture of the $[400,108] would be grossly disproportionate to the gravity of his admitted section 5316 violation." *United States v. $49,766.29*, No. 01-CV-0191 (JTE), 2003 WL 21383277, at *5 (W.D.N.Y. Jan. 22, 2003). If the government meets that burden, claimant "must then 'make a showing sufficient to establish'" his Eighth Amendment claim. *$119,984*, 129 F. Supp. 2d at 476 (quoting *Celotex*, 477 U.S. at 322). Applying these principles, I find that the government has failed to show that claimant could not meet his burden at trial to establish that full forfeiture under § 5317(c) would be grossly disproportionate to his § 5316 violation.

Four factors, derived from *United States v. Bajakajian*, 524 U.S. 321 (1998), guide my analysis: "[1] the essence of the crime of the [claimant] and its relation to other criminal activity, [2] whether the [claimant] fit[s] into the class of persons for whom the statute was principally designed, [3] the maximum sentence and fine that could have been imposed, and [4] the nature of the harm caused by the [claimant]'s conduct." *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010) (citation omitted).

Turning to the first factor, because the government has proved forfeitability only under §

10

5317(c) premised on a violation of § 5316, claimant's predicate "crime was solely a reporting offense." *Bajakajian*, 524 U.S. at 337. Just like in *Bajakajian*, "[i]t was permissible [for claimant] to transport the currency out of the country so long as he reported it." *Id.* While claimant admitted to conduct that would have violated § 5316's reporting requirement on two additional occasions, those offenses also were merely reporting violations and both occurred within a few weeks of the violation that triggered this forfeiture action. Claimant's Statement ¶¶ 5–6; *cf. United States v. Malewicka*, 664 F.3d 1099, 1105–06 (7th Cir. 2011) (concluding that the first factor favored full forfeiture where defendant had violated reporting requirements twenty-three times, meaning her conduct was "much more extensive than that of [the defendant in *Bajakajian*] and moreover, required significant planning").

Moreover, the government has not shown that the money was connected to other illegal activities. The government merely asserts that lawful international business transactions typically do not involve transporting large quantities of cash in duffel bags. Gov't's Mot. 13. While that inference may be reasonable, it does not in itself show that claimant could not establish that the money was unconnected to other criminal conduct. Indeed, claimant avers that the money was "lawful proceeds of [his] trucking/truck parts business" and that he was traveling with the cash "because [he] had been led to believe that [he] could negotiate much lower prices in Turkey if [he] dealt in U.S. cash currency." Shakhmanov Decl. ¶¶ 5–6.

Turning to the second factor, the Supreme Court has explained that § 5316 "was principally designed" to target "money launderer[s]," "drug trafficker[s]," and "tax evader[s]." *Bajakajian*, 524 U.S. at 338. The government has not shown that claimant is likely to fit into any of these categories. While the government has shown that claimant violated § 5316's reporting requirement on two other occasions, this showing falls far short of labeling claimant a money launderer, drug

11

trafficker, or tax evader. Moreover, claimant has raised genuine issues of material fact that he lawfully earned the cash he carried and intended to use it for lawful business purposes. Shakhmanov Decl. ¶¶ 3–6; *cf. Castello*, 611 F.3d at 123 (distinguishing a defendant from the one in *Bajakian*, "who was carrying his own earned money to use for lawful purposes . . . and did not facilitate" money laundering, drug trafficking, or tax evasion).

Turning to the third factor, claimant posits that the maximum fine that could have been imposed under the Sentencing Guidelines is $9,500, based on offense level 6, Claimant's Opp'n 12, and both parties agree that the maximum statutory fine for one violation of § 5316 is $250,000, *id.* (citing 31 U.S.C. § 5322(a)); Gov't's Mot. 20. "There is a strong presumption of constitutionality where the value of a forfeiture falls within the fine range prescribed by Congress or the Guidelines." *Malewicka*, 664 F.3d at 1106. Nevertheless, "a forfeiture that exceeds the statutory maximum fine is not necessarily constitutionally excessive." *United States v. Varrone*, 554 F.3d 327, 333 n.4 (2d Cir. 2009). Here, however, forfeiting all $400,108 for a violation only of § 5316 would exceed the statutory maximum by $158,108, a fairly significant difference.

Turning to the final factor, the Supreme Court in *Bajakajian* found the nature of harm from one reporting violation to be "minimal" because it affected only the government, "[t]here was no fraud on the United States," "respondent caused no loss to the public fisc," and "[h]ad his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country." *Bajakajian*, 524 U.S. at 339. Claimant's circumstances are similar here. Claimant's failure to report the $400,108 affected only the government. Further, there are genuine issues of material fact as to whether claimant intentionally sought to defraud the U.S. government. *See supra* Discussion I.B. The government invokes claimant's admissions to conduct on two other occasions that would have violated § 5316's reporting requirement to argue that those misdeeds

caused harm to the public fisc. Gov't's Mot. 20. But that conduct is not the subject of this forfeiture action.

Overall, the government has failed to show that claimant could not establish at trial that full forfeiture of the $400,108 under § 5317(c) alone violates the Eighth Amendment. Thus, I cannot grant the government summary judgment on its § 5317(c) forfeiture claim.

## CONCLUSION

For the foregoing reasons, I deny the government's motion for summary judgment.

SO ORDERED.

                                                                                                                                      _____/s/_____
                                                                        Allyne R. Ross
                                                                        United States District Judge

Dated:       August 24, 2021
                Brooklyn, New York